**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

MARCHE HARRISON,

        Plaintiff,

    v.

N. AGUILERA,

        Defendant.

No.  2:23-CV-1019-DJC-DMC-P

FINDINGS AND RECOMMENDATIONS

Plaintiff, a prisoner proceeding pro se, brings this civil action.  Pending before the Court is Defendant's unopposed motion for summary judgment.  See ECF No. 35.

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

///

///

1

moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I.  PLAINTIFF'S ALLEGATIONS

This case proceeds on Plaintiff's original complaint.  See ECF No. 1.  Plaintiff names N. Aguilera, a physician at the California Medical Facility, as the only defendant.  See id. at 1, 2.  The Court accepts Defendant's summary of Plaintiff's allegations, which Plaintiff does not challenge, as follows:

> Plaintiff is a California Department of Corrections and Rehabilitation (CDCR) inmate presently housed at CMF. (ECF No. 1 [Compl.] at 3.) Proceeding *pro se*, Plaintiff brought the operative Complaint under 42 U.S.C. § 1983 on May 30, 2023. (*Id*. at 1.) Plaintiff claims that Defendant Dr. N. Aguilera was deliberately indifferent to Plaintiff's serious medical needs. (*Id*. at 3.) Specifically, Plaintiff alleges Dr. Aguilera failed to ensure timely treatment for back issues and Plaintiff's serious knee injury, which has caused serious pain and suffering. (*Id*. at 4.)
>
> Plaintiff alleges Dr. Aguilar knew a January 30, 2020, MRI on Plaintiff's left knee showed a medial meniscus tear and evidence of a prior MCL sprain. (*Id*. at 5.) Plaintiff claims Dr. Aguilar knew Plaintiff was reporting lower back pain on April 22, 2022, but conspired to conceal the facts about Plaintiff's injury. (*Id*. at 5-6.)
>
> Plaintiff alleges that Dr. Aguilar is not qualified to make an orthopedic diagnosis, failed to schedule corrective surgery of Plaintiff's knee injury and lower back, and left Plaintiff to suffer in extreme pain and discomfort. (*See id*. at 6-9.) Plaintiff alleges that Dr. Aguilera continues to deny him with timely and proper treatment at CMF and as a result, Plaintiff continues to experience pain in his left knee and back. (*See id*.)
>
> ECF No. 35, pgs. 7-8.

/ / /

/ / /

/ / /

3

## II. DEFENDANT'S EVIDENCE

Defendant's motion for summary judgment is supported by a separates statement of undisputed facts, see ECF No. 35-2, and Defendant's declaration, see ECF No. 35-3. Based entirely on his declaration, Defendant contends the following relevant facts are undisputed:

1. Plaintiff's medical records show that Plaintiff received physical therapy for his left knee in March 2018, which resulted in improved stability and strength.

2. In April 2018, Plaintiff stated that physical therapy was helping.

3. In November 2019, Plaintiff expressed his opinion to Dr. Connor (who is not a party) that physical therapy did not help and actually made his knee pain worse.

4. An MRI on Plaintiff's left knee was performed in January 2020 and revealed a complex tear affecting the posterior horn of the medial meniscus but with the lateral meniscus intact. The MRI also showed thickening of the medical collateral ligament, which suggested a prior MCL sprain.

5. In Defendant's medical opinion, a meniscus tear can be treated without surgery and can even heal on its own.

6. Defendant began as Plaintiff's primary care physician in December 2020.

7. When Defendant first reviewed Plaintiff's file in December 2020, Defendant noted that Plaintiff had a pending physical therapy evaluation and treatment order, and that his discomfort and pain was being managed with acetaminophen as well as lidocaine patches and capsaicin cream. Defendant concluded at the time that Plaintiff's condition was stable.

8. Defendant instructed Plaintiff to submit a written Request for Healthcare Services, known as a CDCR form 7362, if he had any medical issues.

9. Documents in Plaintiff's medical file indicate that further physical therapy sessions were cancelled due to COVID-19 precautions. Defendant had no involvement in the decision to cancel physical therapy sessions.

10. Defendant re-submitted a physical therapy referral for Plaintiff, which commenced again in early June 2021.

11. On June 9, 2021, Plaintiff attended physical therapy and was noted to have a limited range of motion, tightness, and abdominal weakness. No overt pain behaviors were noted.

///

4

12. Plaintiff was scheduled to attend an appointment with Defendant on June 24, 2021, but did not appear.

13. On the same day, Defendant wrote Plaintiff a note advising Plaintiff to submit a Request for Healthcare Services to schedule an appointment.

14. On July 19, 2021, Plaintiff was discharged from physical therapy to an independent exercise program.

15. At the time, the physical therapist noted that Plaintiff did not report any pain despite using gym equipment on the prison yard. The therapist also noted improved strength and stabilization.

16. On September 13, 2021, Plaintiff submitted a Request for Healthcare Services complaining of extreme back pain and requesting an MRI.

17. Defendant saw Plaintiff on September 20, 2021, at which time Plaintiff informed Defendant that his back pain began after he performed strenuous exercise, including up to 500 push-ups. On physical examination, Defendant observed tenderness over the paraspinous muscles of the lumbar region and discomfort with extension and flexion. Plaintiff had the ability to transition from seated to standing without difficulty.

18. Defendant did not think an MRI was medically warranted but ordered a lumbar spine x-ray to rule out bony abnormalities. Defendant also referred Plaintiff back to physical therapy.

19. Plaintiff submitted another Request for Healthcare Services form for lower back pain on December 30, 2021. In this form, Plaintiff noted that his prescribed medications were not effective for pain and that he had not been called for physical therapy.

20. Plaintiff was examined by a nurse the same day who informed Plaintiff that his lumbar spine x-ray was scheduled for January 11, 2022. On physical examination, the nurse noted that Plaintiff's spine showed full range of motion and that Plaintiff was able to transition from sitting to standing without issue. Plaintiff was also able to bend without issue. Strength was normal and sensation was intact.

21. On December 31, 2021, Defendant re-submitted the order for physical therapy and ordered Plaintiff be given one week off from his job assignment.

22. Defendant next saw Plaintiff on April 4, 2022. At the time, Defendant noted that further physical therapy had been cancelled due to a facility COVID-19 outbreak. The scheduled January 11, 2022, x-ray also did not occur for the same reason. Upon learning this, Plaintiff became upset and left the appointment before Defendant could conduct an examination. Defendant nonetheless re-submitted orders for physical therapy and a lumbar x-ray.

///

23.     X-rays of Plaintiff's lumbar spine were taken on April 14, 2022, and revealed mild degenerative changes.  The results did not indicate the need for aggressive treatment.

24.     Plaintiff restarted physical therapy on April 18, 2022.  The physical therapist noted that Plaintiff was observed moving and walking with no signs or complaints of any lower back aggravation.

25.     On May 6, 2022, the physical therapist reported that Plaintiff had completed eight of 12 sessions and was advancing well with stability and strength.

ECF No. 35-2, pgs. 1-10.

In his declaration, Defendant adds the following:

53.     During the course of assessment and treatment of Mr. Harrison during the relevant time, I was never deliberately indifferent to his medical needs. The course of treatment for Mr. Harrison was based on his medical history, notes from other providers recorded in his medical file, the symptoms that he presented with at the time of evaluations and assessments, the results of examinations by his various physicians and medical staff conducted on him, and on my medical training and experience. Mr. Harrison's lower back complaints and symptoms often had indications of over-use triggers that responded well to physical therapy. Similarly, a conservative course of treatment for Mr. Harrison's left knee complaints was, in my judgment, the most appropriate path.

54.     Further, although I recommended consultations with orthopedic specialists, and provided numerous orders to establish those consultations, Mr. Harrison's failure to attend those appointments, as well as failure to attend follow-up appointments with me, created many delays for addressing his complaints. Despite this, in my opinion, the course of treatment provided to Mr. Harrison was medically acceptable given his symptoms and the circumstances.

55.     I did not delay any referral to orthopedics, or deny any other treatments, to harm Mr. Harrison or cause him pain. I believed at the time, and continue to believe, that a conservative treatment approach was the best option and other more aggressive treatments were not medically appropriate for him at those times. I did not, and do not, believe that any action created a risk to his health or safety.

ECF No. 35-3, pgs. 10-11.

/ / /

/ / /

/ / /

/ / /

/ / /

6

## III. DISCUSSION

In the pending unopposed motion for summary judgment, Defendant argues that Plaintiff cannot satisfy the essential elements of an Eighth Amendment claim based on denial of adequate medical care to treat a serious medical condition. See ECF No. 35. For the reasons discussed below, the Court agrees.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

7

activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not generally give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).  However, a claim involving alternate courses of treatment may succeed where the plaintiff shows: (1) the chosen course of treatment was medically unacceptable under the circumstances; and (2) the alternative treatment was chosen in conscious disregard of an excessive risk to the prisoner's health.  See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

Assuming for purposes of Defendant's motion that the various health issues Plaintiff experienced while he was treating with Defendant constituted serious medical conditions, the Court nonetheless agrees with Defendant that Plaintiff cannot establish the subjective element of his Eighth Amendment claim.  As reflected in Defendant's declaration, which is based on his review of Plaintiff's medical file, his own first-hand observations, as well as his medical background and experience, Defendant provided Plaintiff with some kind of treatment on every occasion treatment was sought.  This treatment included visits with Defendant,

8

physical examinations by Defendant, and several referrals for x-rays, physical therapy, and outside specialist consultations made by Defendant.  To the extent outside specialist consultations were delayed, the evidence before the Court indicates that those delays were due to Plaintiff's own actions, not those of Defendant.  Further, there is no evidence of further injury as a result of delay.

The Court finds that Defendant has met his initial burden on summary judgment of demonstrating the non-existence of a material issue of fact as to the objective element of Plaintiff's claim.  As indicated above, Plaintiff has not filed an opposition to Defendant's motion, or otherwise submitted evidence to create a genuine dispute, and the Court is unable to consider Plaintiff's complaint as his declaration because it is not verified.  Thus, the Court finds that Defendant is entitled to judgment in his favor as a matter of law.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendant's unopposed motion for summary judgment, ECF No. 35, be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 11, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

9